UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WENDY LONG | CIVIL ACTION |
| VERSUS | NO. 18-8600 |
| AZALIA MARIN & ALLSTATE FIRE AND CASUALTY INSURANCE CO., ET AL. | SECTION A(1) |

### ORDER AND REASONS

The following motions are before the Court: **Motion for Summary Judgment (Rec. Doc. 75)** filed by defendant Uber Technologies, Inc., and **Motion for Summary Judgment (Rec. Doc. 83)** filed by defendant James River Insurance Co. Plaintiff Wendy Long opposes the motions. The motions, noticed for submission on February 19, 2020, are before the Court on the briefs without oral argument.

**I.    Background**

Wendy Long, the plaintiff herein, was injured while riding as a backseat passenger in a vehicle owned and operated by Christopher Hightower. The accident occurred on September 22, 2017. It is undisputed that neither Long nor Hightower were at fault for the accident because a driver insured by Allstate rear-ended Hightower's vehicle. Long settled with Allstate but contends that the other driver was underinsured. Hightower did not have UM coverage on his personal vehicle. However, Hightower was an independent Uber driver and Long, who did not own a vehicle, was a frequent user of the Uber ride-sharing app. In fact, on at least one occasion before the date of the accident, Long had obtained an Uber ride with Hightower by using the Uber app. Long's

injuries may or may not be covered by a UM policy, issued by James River Insurance Co., that protects Uber riders.

Both James River and Uber have moved for judgment as a matter of law on Long's claims. A jury trial in this matter is scheduled for August 17, 2020. (Rec. Doc. 111).

## II. Discussion

The Court begins with James River's motion for summary judgment. James River contends that under the clear and express provisions of its policy Long is not entitled to UM coverage. The policy only provides UM coverage for a "covered auto," and James River contends that the undisputed facts show that Hightower's vehicle was not a "covered auto" when the accident occurred.[1]

The policy's Covered Auto Designation Symbol endorsement defines (in relevant part) a "covered auto" as

> Any passenger "auto" while being used by a "Rideshare Driver," in connection with the "UberPartner application" accessed using account credentials issued under a contract with a Named Insured,[2] provided . . . the "Rideshare Driver" has logged and recorded acceptance in the "UberPartner application" of a request to provide transportation services,

---

[1] It is not quite accurate to say that the James River policy "named as an insured any passenger auto operated by a Rideshare Driver in connection with the UberPartner application . . . ." (Rec. Doc. 83-6, Yowell affidavit ¶ 4). The policy separately defines "who is an insured" from the concept of a "covered auto," and both statuses are required for UM coverage. James River does not point out the specific section of its policy that elevates an Uber rider in a covered auto to insured status under its UM policy and instead focuses only on "covered auto" status. Given that the named insureds in this case are all LLC's, presumably some part of Section B of the Louisiana Uninsured Motorists Coverage—Bodily Injury endorsement is intended to confer UM coverage on Uber riders because that is what Uber's website promises. Thus, insured status for Long is not at issue apart from the factual question of whether Hightower's vehicle was a "covered auto."

[2] The named insureds on the policy are Raiser LLC, Raiser-CA LLC, Raiser-DC LLC, and Raiser-PA LLC, none of whom are parties to the case at this time. (Rec. Doc. 83-2 at 2). Uber Technologies, Inc. is an additional insured. (*Id.* at 32).

and the "Rideshare Driver" is . . . traveling to the final destination of the requested transportation services including, but not limited to, dropping-off of passenger(s).

(Rec. Doc. 83-2 at 25).

"Rideshare Driver" means an individual that is operating a motor vehicle in connection with the use of the "UberPartner application." "UberPartner application" means any smartphone application licensed by a subsidiary of Uber Technologies, Inc. which is utilized by a Rideshare Driver to receive requests for transportation from passengers. (*Id.* at 27).

The crux of James River's motion for summary judgment is that the ride with Hightower on the morning of September 22, 2017 was not procured through the Uber app.[3]

It is undisputed that on the morning of September 22, 2017, Long experienced problems with the rider version of the Uber app. There is no reason to believe that Hightower and Long had set out to circumvent use of the Uber app on that morning.[4]

---

[3] Long does not take issue with James River's reading of its policy insofar as James River contends that coverage applies only if the ride was arranged through the Uber app. Long does point out, however, that whether or not Hightower was logged in to the app at the time of the accident is irrelevant and does not affect coverage so long as the ride was procured through the app. This Court agrees. An Uber rider that uses the app to procure a ride with an Uber driver has no control over whether the driver logs off of the app once the ride is underway so this cannot deprive the rider of coverage. And the policy does not purport to do that. Hightower does not dispute that he did have the Uber app up and running when Long was trying to connect with him through the Uber app on the morning of the accident.

[4] While it is true that Hightower had given Long his personal cell phone number during a previous Uber-arranged ride, and there was activity between their phones on the morning of the accident (although they may or may not have actually spoken), the record demonstrates that Long, who did not own a vehicle and who worked in New Orleans East, was a frequent if not daily user of Uber rides that were procured and paid for through the Uber app. In fact, given that Long's fiancé had allowed her to link his debit card to the Uber app on her cell phone, it would seem that Long would have had very little incentive to

Hightower and Long provide different versions, however, of what happened after the problems with the Uber app. If Hightower is to be believed, Long was never able to get her rider version of the app to work that morning yet he agreed to drive her from Transcontinental and Loveland Street in Metairie to New Orleans East anyway without any terms having been reached regarding payment ("You can pay me back later or something.") (Rec. Doc. 93-2, Hightower deposition at 19). Long, on the other hand, is adamant that the app did ultimately work and that at one point in time her Uber history did reflect the ride on the day of the accident. Her trip history no longer shows the ride for September 22, 2017 but Long maintains that it was there at one point in time and that prior to leaving her house in Hightower's car he had told her that his driver version of the app had connected with her rider version of the app to set up the ride. If Long's version of events is credited then she is entitled to UM coverage under James River's policy.

Contrary to Defendants' assertion, Hightower is not a disinterested witness and his testimony and Long's testimony are in direct conflict on the essential facts that drive the question of whether Hightower's car was a "covered auto" during the ride that led to the accident on September 22, 2017. James River contends, however, that the "objective" evidence in this case so refutes Long's testimony as to render it inadequate for purposes of creating a genuine dispute as to material facts. For instance, James River points out that Long's Uber history report does not include the September 22nd

---

purposely circumvent using the app in order to obtain a ride. In other words, Long's assertion that on the morning of the accident she had in fact tried to use the Uber app to legitimately arrange transportation from an Uber driver is certainly plausible notwithstanding the cell phone records upon which Defendants place so much reliance.

ride, and that the bank records for Long's fiancé's account do not reflect a charge for the September 22nd ride.[5]

The Court is persuaded that Long's testimony is sufficient to create an issue of fact and that the contrary "objective" evidence is simply for the jury to consider when determining whether Hightower or Long is the more credible witness in this case. It is undisputed that Long was having technical issues with the Uber app on the morning of September 22nd and as Long points out, even Hightower's app history reflects erratic logging in/out right about the time that Long was trying to connect with Hightower's app. No person who has used a computer or app has not experienced an anomaly that the systems experts could not explain. It is the jury's province to determine if that is what occurred in this case.

James River's motion for summary judgment is DENIED.

Likewise, Uber's motion for summary judgment, which is premised on the same erroneous contention that Long's testimony does not create an issue of fact, and on the irrelevant assertion that Hightower was not logged in to the Uber app at the time of the accident, is DENIED.

Accordingly;

---

[5] The Court notes that the bank records were difficult to decipher because each entry has three date/time stamps none of which were explained in the briefing. The Court assumes that Defendants have included on their witness list a representative from the bank to lay a proper foundation as to the debit card records because otherwise the confusing date/time stamps make it appear to the casual observer that there was an Uber charge on September 22, 2017. There are two trips charged for that day with descriptor XVD3S, one at entry 51 (purportedly for a ride on September 21, 2017), and one at entry 56.

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 75)** filed by defendant Uber Technologies, Inc. and the **Motion for Summary Judgment (Rec. Doc. 83)** filed by defendant James River Insurance Co. are **DENIED.**

March 5, 2020

*[signature]*
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE